Good morning. We'll hear argument first in No. 2011-1297, Landmark Screens against Morgan Lewis. Mr. Rosenberg. MR. ROSENBERG Good morning, Your Honors. When I got on my airplane on Monday, I had three issues to consider and argue. When I arrived here in Washington, I learned that there's a fourth and then your Honor's Desire argument on the subject of whether there is in fact subject matter jurisdiction over this case. It's quite important, however, that I be able to address at least the issue of equitable tolling as well to clarify where we think the case turns out with respect to our entitlement. If this court were to exercise jurisdiction to having the case, well, to getting a reversal of the grant of summary judgment on the issue of whether the actual fraud claim was timed. Now, the equitable tolling and equitable estoppel, the various characterizations that are given to the arguments that are made sometimes overlap some of the different discrete arguments. So just to be clear, when you're saying equitable tolling, are you referring to the fact that the case was pending in state court and therefore the time should be suspended during the time that that was pending? Or are you talking about the fact that the fraud claim was not filed as long as, as you characterize it, there was a continuing inducement not filed because of representations that things were being done to cure the problem? They do overlap a bit, but the point that I am addressing is the first one. Okay, that's what I thought. Which is that. But I suppose both of them can be referred to technically as equitable tolling, although one of them is an accrual rule, I guess, really. The latter was more thought of in terms of equitable estoppel in the briefing, wasn't it? Correct. And that's how both the California courts and the Ninth Circuit, particularly in interpreting California law, address the two issues. They are separate, particularly in a malpractice kind of setting. On the equitable tolling issue, I congratulate both parties on briefing the California law well. I mean, it was a bit like watching a ping pong match in China, the ball going back and forth. I say this case, I say that case. You mentioned in your brief the possibility of a remand to the district court to sort out exactly how California law gets applied in this issue. That is a possibility, Your Honor. And just for my help, run through for me which aspects of the California law you think a district court judge familiar with California law sitting out there might be a little better able to deal with than us. Is this the same issue, same case theory? What piece of the puzzle is something that would perhaps be better dealt with on remand than by us? Well, our first position is that the court can review de novo because there really are no contested issues of fact. And if so, our position is that the entire actual fraud claim is told for the full length of the state court proceedings, the two and a half years. And it's a three-year statute. It was plainly filed. The state action was plainly filed within the three-year statute. There's no issue of estoppel per the malpractice statute of limitations rule of California, which is the tightest one in the country as we understand it. There's no savings statute in California? They don't address this in a statutory form like most states? In California, California Civil Code 340.6 addresses equitable tolling and identifies a very small set of- Right, I understand that for negligence. But what I'm talking about is that most states have what they call a savings statute for all civil claims, that once they're dismissed from the apparently wrong court, you get a year or some period of time to refile. There's no statutory savings statute in California, I take it? Well, if there is, the argument- it doesn't involve the statutory saving case or statute because the arguments involve issues like whether the claim for actual fraud is distinct or not distinct. It wasn't expressly asserted or alleged in the state action. Notice was given to defendants of the potential of that claim, and per federal rules of civil procedure pleading as well as California pleading constraints until there was a certain amount of discovery, the actual full-blown claim could not be alleged, could not end the complaint. Go ahead, I didn't want to interrupt. You can finish your- I think I did finish. Very good. The issue that we're discussing was not specifically addressed by the district court. That's correct. Which led me to wonder how it had been raised to the district court. Now, in going through the papers- Memorandum. Yeah, the place where I thought maybe you were asserting that it was raised was I think in a surrebuttal memorandum at JA 938. Would that be the place where this point was raised? That is the place where it was raised, and I believe that surrebuttal was allowed. Right, it was. So I just wanted to pinpoint, because it's raised in, I don't want to say a passing manner, but not- it isn't thoroughly- well, I'd put it this way. No one would accuse you of having beaten a dead horse on this. I believe trial counsel did not beat the dead horse on this. Okay, but it was- Hasn't the subject matter been ventilated earlier in connection with the discussion of the dismissal of the negligence claim? Only to a point, because there was- CCP 340.6 precluded- I understand that, but I thought the judge recognized that under the leading- Yes, Your Honor. He mentioned the leading California case. He said, you know, but for the fact that there's a subset of this one-year statute saying you can't acquit until you have a pretty good argument under X, Y, Z. And that's exactly the same case that you cited back to him in your serving time. That is correct, Your Honor. Okay, and- How do you deal with the fact that Judge Fogle, in his order on the dismissal of the negligence claim, specifically said that these are distinct harms? Well, we deal with it by identifying the fact that within the Ninth Circuit, and we believe in California, the distinct claims issue is not a threshold issue. Davidson and, I believe, Gonzales and some of the other cases make that very clear, and they're- But Judge Fogle wasn't briefed on that point. Sorry? I didn't see anything in the briefing that where Judge Fogle was given the layout that we now have in the briefs. Unfortunately, that is correct, Your Honor. But that is the layout. The layout is that it's not the threshold inquiry. It goes to one of the two prongs. Prong one is their prejudice to defend that, and there is none. They were on notice from year one, at least so far as some of the pleadings in the very first complaint and every complaint thereafter, that concealment and misrepresentation were at play. What do we know? Can you represent to us that the very most current California law has been given to us in the briefs on that point? Yes, Your Honor. This problem is, it then goes all the way back to Judge Tabriner, the old cases. I mean, this whole issue of California is very equitable, estoppel, happy, but it's morphed over the years in terms of what the analytic framework is. It is our understanding, and we did refresh our research up to at least two weeks ago with a view toward perhaps submitting an update letter to the court and found nothing that disturbed any of the authority on the critical issues. Is it fair to say that what this really comes down to is whether there is a discrete harm, which you're trying to get at by two alternative legal theories, which under California law, as I read it, would say it's permissible to apply equitable estoppel. In essence, yes. Versus two different injuries, as in, you say, the Aerojet case, there was the initial injury and then there was the aggravation, or the Loesch case, is that the name of it, in which there was a 1983 constitutional claim and then separate claims of state torts, dealing with what the court characterized as separate injuries. Yes, and some of those cases involve very queer procedural postures where the federal claim was filed first and the administrative claim was tried to be sucked in. Yeah, but if I recall correctly, in Gonzales, if I'm recalling the correct case, Judge Reinhart distinguished that precisely on the procedural ground and, of course, Gonzales was adopted by the en banc, if I recall correctly, and David did. Yeah, of course, Ninth Circuit doesn't speak authoritatively for California any more than we would. So there's a certain derivative character to anything the Ninth Circuit says about California law. I mean, if the California Supreme Court were to say tomorrow that Judge Reinhart had no idea what he was talking about, that would prevail as California law. That's absolutely correct, but the California Supreme Court, California Courts of Appeal have not said that. I understand, I understand, but one can't really take what the Ninth Circuit says as gospel on that. It's advisory, but not conclusive. Well, except, as I understand this court's rules, when you're dealing with local law issues, first you apply the law of the state as best you can discern it, and then you apply the home circuit's spin on or interpretation of the law of the state. But your argument here is that the state law itself is perfectly clear. Yes, Your Honor. Can I ask a jurisdictional question? If we look at the first complaint you filed in the district court, not the First Amendment or Second Amendment, just the first complaint, just sort of tell me quickly why that complaint alleges a matter of federal patent law jurisdiction. I've got the complaint in front of me. I know. Obviously, Your Honors, you've put me in this strange place. I and my firm briefed and argued in the Court of Appeal and went up to the Cal Supreme Court and the United States Supreme Court precisely that issue. And it was our position, looking at Judge O'Malley's decision in Byrne of recent vintage, that this is all hypothetical and it should not be treated as within the jurisdiction of this court. Problem is we lost all the way up to the Supreme Court of the United States, and now we're here having been thrown out of state court, lost our negligence claims, now dismissed from federal court. And if this court were now to say that we have to go back to state court, well, I know the arguments we're going to meet, and I know I'm going to have to argue that the state action, which overlapped with and grasps the federal action, extends the tolling period as necessary to allow us at least to get the fraud claim going. I didn't find a theory of harm being pled in your federal cause of action. In your state cause of action, you pled the harm being interference with your state law right to license an application. And that was your argument as to why you were injured, and that was a state law cause of action. You expressly said in your state law cause of action, there's no one out there this would be infringing, we're not talking about the fact that if we'd gotten the patent, there's someone we could have gone and sued. So I'm looking in your complaint here, you do say in paragraph 40, that the conduct of the attorneys was such that you were not afforded the filing date that you wanted in order to preserve valuable patent rights for the invention. So how were you hurt by that? Well, they would essentially be the same kinds of patent rights, and in terms of the hypothetical quality of the patent, well, hypothetical, non-hypothetical, excuse me, I guess I tripped on that one. The claims would also involve the differences between the divisional application claims and the reissue patent claims that, you know... Presumably it would have had some value that you would have lost, but I didn't see any allegation. Maybe my problem is I didn't see anything alleging harm, damage, which is an element of the cause of action. You said we'll prove damages when we get to trial. That's correct. That was the intention, which is usually consistent with pleading in federal court. If I may interrupt just for a second. Even though your time has expired, we've asked you a lot of questions. I was just going to say that we'll let you continue on and give an equivalent amount of time to your opposing counsel. So you shouldn't feel that you need to run from the lectern. Thank you, Your Honor. Is there any mechanism, if we were to say that we don't have jurisdiction over these types of cases, is there any mechanism for reopening the original state case, like a 60B? Obviously after we received the communications from the court on Monday, we researched that point. And it appears that there is a recent California Supreme Court decision that makes it just about absolutely clear, there may be some arguments we could come up with, that once the case is over, the case is over, the court of appeal may not reopen that case. What we would have to do is file a new action. What's the name of that California Supreme Court case? Okay. Well, if you don't have it immediately available. No, I have it handy. I just have to remember which. You could give it to us on your rebuttal. I will do that. That will be fine. And, you know, I could make the argument both ways now in light of Davis and Byrne as to whether there is federal jurisdiction here. Suffice it to say that's where we are and for us to be booted now would. Well, Byrne didn't change the law. Byrne just expressed some distress about the law. I understand that. But he couldn't change Davis. I have one quick question. On the issue of the motion for partial summary judgment that was raised by Morgan Lewis initially, I understood that their desire to get Judge Fogle to limit the possible liability on the claims of the reissue was addressed, I think, to claims 32 and 39 alone, saying that those claims were invalid for an on-sale bar. And as I understood it, the briefing on the partial summary judgment motion was entirely on that basis. That is correct. There was no mention of Doyle, no mention of Herita at all in the papers. No, there was mention of both in starting in the reply brief and then there was a surreply that was put. I didn't see it mentioned. Your surreply, there was a hearing on May 20th. It was in the surreply, too, I'm pretty sure. Did the subject of Herita and Doyle come up at the May 20 hearing? Do you know? There's no transcript of that hearing. And was it raised by the judge? Well, I believe it was in the briefing because in the reply. I didn't see it anywhere in the briefing. Okay. I can try to check during and cite to the briefs. Thank you, Your Honor. Well, let me just ask if I expressed perhaps not in the best form what I understood your argument. The core of your submission on the equitable total issue was. Maybe you can express it more crisply than my characterization. The core of our position on that issue is there are two elements to equitable total. Did plaintiff act reasonably and was there any prejudice to defendant due to the delay in filing the action? As to plaintiffs acting reasonably and filing just in state court initially, that is reasonable under California law in terms of you don't have to double file. And given that until AMT and UNICEF came down, there were traces going in any direction with respect to whether this action was appropriately in federal or state court. As to prejudice, defendants were put on notice all along the way of the state court action that fraud was in play. Plaintiffs acted reasonably. Put on notice because of the response to the interrogatories? That's one of the reasons. And Gonzalez, if I recall correct, says that's sufficient. In addition, there were pleadings. In the pleadings, there was some mention of that in connection with the fiduciary duty cause of action. And given the constraints on pleading and the sordid history of this case with the stays for arbitration and such, given the constraints on pleading, until you collect it all, you really cannot plead actual fraud either in state court or federal court. And we cited authority on both of those subjects. Under California law, does actual fraud encompass both material omissions and material misstatements? Or what is actual fraud defined as? Concealment. Material concealment is... Okay, so material omissions would be just as actionable as... I believe so. ...affirmative misstatement. In the context of the duty. In the context of the duty, yes. I'm glad I asked you to articulate your position because it's a little different from what I had understood. You're really folding the same harm type analysis from Loesch, Arijet, and so forth into the prejudice prong, aren't you? Absolutely. So that you're not treating the same injury as a hard and fast rule as long as, in some way, the defendant has had sufficient notice to be prepared to meet the later claims, right? Correct. Based on similar facts. Okay, I understand. Very well, we'll hear from Mr. Peters. Thank you, Your Honor. Thank you, and we will restore your rebuttal time, Mr. Richard. Thank you very much. Let's see if we can add... Let's see, I've lost track of how much time it was. About seven minutes. About seven minutes. Good. Thank you. If you'd add that time to Mr. Peters' time in case you need it. May it please the court, my name is Elliot Peters, and I represent Morgan Lewis and Thomas Kohler in this court, as I did in the court below. I'd first like to address, obviously I'll address any questions the court has, but I'm going to start with equitable estoppel because that seems to us like the most significant central issue here. In response to one of the court's questions, it really was raised for the first time in the surreply of the appellants, and I can give the court the... But you haven't argued on appeal that there was waiver. No, we're not arguing waiver, but I believe there was a question from the court about when it came up. Where it was raised. It's at JA 840 in the joint appendix, and it actually came up on the last page of their surreply, and it wasn't even really argued. It was kind of like, Your Honor previously observed that maybe equitable estoppel could apply here, although that observation by Judge Fogle was made in a different context. What Judge Fogle was observing was that if equitable estoppel could apply to your attorney malpractice claims, which it can't under California law, you might have a good case for equitable estoppel. He never suggested that the fraud claim... Well, because that issue wasn't before him at the time. It wasn't before him at the time he made the observation. It was before him. The summary judgment issue only pertained to a fraud claim, which had never before been asserted. I understand that, but when he made the comment, he didn't say, I don't think you have a good equitable estoppel claim or equitable tolling claim on fraud. He just never got to it. Right, the observation about Judge Fogle didn't apply to fraud. I think I agree entirely with Your Honor. The thing I really want to focus on, though, is that under California law, interpreted by the California courts in Aerojet and Lohr, and as interpreted by the Ninth Circuit in Daviton and Arnold, there is a threshold issue for equitable tolling about whether the claim being asserted now is the same wrong. That's the language that they use. Is it the same wrong or a distinct wrong as what was asserted before? In the words... Why do we make up the cases and say it's not a threshold issue? It's part of the gamish. It's not a separate, independent prong that has to be met. The case has been cited by your adversary to say very clearly it's not a separate, independent prong. It's part of the overall analysis as to prejudice. There's really one case that says that, and that's Cervantes. I think he referred to it as Gonzales. I think it's actually... I think he meant just misspoken. I think there are more that I found.  But the California case is Lohr and Aerojet. In fact, Aerojet involves a situation where there was a claim asserted, and then later there was a fraud claim asserted, and the gravamen of the fraud claim was concealment of the conduct which gave rise to the underlying accident. I think it was a worker's comp. Yeah, but Aerojet, and what struck me about Aerojet after reading it is that the court seemed to emphasize that there was the initial injury, but then there was an aggravation of that injury, segregable in terms of the harm done to the plaintiff by virtue of the concealment, which prevented the plaintiff from minimizing the original injury. So it's at least the way the court seemed to treat it. It was separate harms. I don't mean to split hairs, Your Honor, but I think they speak of it in terms of separate wrongs, and they don't focus on the nature of the damages claimed or the nature of the injury, but they focus more on the issue of wrongs. Judge Fogle... Is your argument really that any time there's a different cause of action? No. That it's... No, it's not the cause of action. For example, here, if you asserted professional negligence and breach of fiduciary duty, you're rising out of the negligence as they did. Those would be different causes of action, but they would be the same wrong. Why isn't the wrong here the loss of patent rights? The wrong here... It's that you even have, in one of your briefs you filed someplace, you said, well, their harm here is they're asserting loss of patent rights. The point, Your Honor, that we make is that fraud is a distinct wrong. I think the underlying damages that are claimed are similar, but, you know... At the time of the motion to dismiss, the first motion to dismiss the negligence claim, you argued that actually the harm was identical and that this was all related to the same transaction. We did, and they argued the exact opposite. They argued that their fraud claim alleged a distinct, a different wrong entirely, a distinct wrong, and Judge Fogel made the observation that fraud is a... And I'm reading, I'm quoting from his opinion. This is the joint appendix at 937. Fraud is a distinct wrong and is no more a necessary incident to the rendition of legal services than dishonesty is to any other profession. And then, again, in a footnote on the next page at 938 of the joint appendix, Judge Fogel says fraud is a distinct wrong. Now, if we had prevailed on that argument that they were all the same, that it was all part of the same harm, at that time, the case would have been dismissed on the California one-year statute of limitations. It was actually the plaintiff appellant who, by arguing then the opposite of what they're arguing now, they argued, no, fraud is distinct. Fraud is a distinct harm. Fraud is a separate... What's the purpose of this dichotomy? Are you trying to argue that they're a stop and you're not? Well, we did make the observation in our brief that they should be a stop. Doesn't it just bring us back to whether or not California law says that we frankly don't care whether it's a distinct wrong or not as a separate independent test? Isn't that really... If we disagree with you on the reading of that Reinhart case, not so much misreading, you simply just want to avoid it. If the assessment of the separateness of the wrong is simply part of the overall concern as to prejudice to your client, then this discussion we're having right now is irrelevant. Yes, but in order to do that, Your Honor, I think the court then would have to set aside or overlook the en banc Ninth Circuit decision in Daviton, which says very clearly that deciding whether a distinct wrong is being alleged is a threshold matter. You'd have to overlook the Ninth Circuit's decision in Arnold. You'd have to overlook the California court's decisions in Aerojet and Lohr, which make the same observation. We believe that... The law isn't crystal clear, but we believe that... ...suggested that a remand would be in order. I mean, we're not steeped in Ninth Circuit law. I mean, not steeped in California law. I understand that, Your Honor, and it is somewhat anomalous for us to come here before the Federal Circuit and argue an issue of California law the way we are. That's just the way this case has evolved, and we do believe that the weight of California authorities are clear and powerful that fraud is a distinct wrong, that that's a threshold issue, and that the failure to allege fraud initially means that the pendency of the malpractice action during all those years does not equitably toll the statute of limitations. There's no case in which a California court or the Ninth Circuit has held that a later filed fraud cause of action can be maintained under an equitable tolling theory based upon a prior negligence claim. This may even go farther by way of splitting hairs, but I think it is an important point, at least if we regard the Aerojet type focus as being an independent requirement for the equitable tolling. Now, you say you really ought to look at whether there is a separate wrong, and your opposing counsel is focused more on whether there's a separate harm or injury. Wrong suggests, if there's a different tort, even if it leads to the same underlying injury, that that would be distinct, if I understand your argument.  Were we to conclude in this case, in other words, that the ultimate harm is the same, whether the cause of action is deemed to be fraud or negligence slash malpractice? Your Honor, I don't think that that's the proper analysis. I think it's based upon the concepts underlying. It's not just the cause of action, but it's the concept underlying the cause of action. I think Judge Fogel got it exactly right when he said, it's a distinct wrong and is no more incident to the rendition of legal services than dishonesty is to any other person. And you feel Daviton supports this distinction that you're drawing? Yes. Where in Daviton does it say that it's a threshold question? Daviton specifically talks about this issue as related to the prejudice prong. It says simply that equitable tolling does not apply to a claim where there is a distinct wrong. I have the case here, and I can look for the language that makes that clear. But they address the issue of a distinct wrong and then go into this two-part test. And it's our view that Appellant's view of the law is incorrect because they would like to skip over or forget about the threshold issue and just jump right into the two-part test and try to roll the issue of wrong into the two-part test. And we don't believe that that's the case. Well, Daviton specifically rolls the issue of wrong into notice and prejudice. Daviton itself, the court in Daviton specifically rolled the issue. I don't think that I agree with that statement, Your Honor, of Daviton. You rely on the Arijet case. And you're right that Arijet does characterize the distinction as being a different wrong. But then adds, and I'm reading from, well, I don't have the California App third citation, but trust me on the language. I do. Plaintiff's remaining cause of action asserted in their First Amendment complaint is for a different wrong entirely. So, so far, that's the language he used. But then they continue. That being, referencing the wrong, the harm they assertedly suffered as a result of the defendant's fraudulent concealment of the injuries caused. So they seem to be defining wrong as harm or injury. And therefore, it would seem that under Arijet, if you have the same harm or injury, you have the same wrong, whether you regard this as a threshold issue or one that's folded into prejudice. And isn't that this case? No. I think the analysis is based not on the way damages are defined in the case, but instead on the nature of the wrong. Is the nature of the wrong distinct? Does fraud create, does alleged dishonesty or lying or concealment create a different kind of wrong or create a different kind of harm than negligence? I don't think it's restricted to the cause of action, but it's based on the nature of the wrong, the nature of the harm, and that fraud is different than negligence, whereas, for example, in this case, negligence, breach of fiduciary duty as an attorney are the same wrong. They're bound up together as the same wrong, and fraud is distinct. And that's the point that Judge Vogel was making. What if you had, say, breach of contract and negligence, like the famous car dealer cases where you get sold a car and you say, well, my harm is I got a bum car, and I sue the dealer for negligence, and if I don't win on that, I sue him for breach of warranty. Are those different harms? Would those be distinct harms? That's not this case, and I haven't. My initial reaction is no, that would be the same wrong because they both arise out of the contract. Yeah, but the nature of the, the way you've been talking about analyzing the nature of the claim, fraud is different from malpractice. Well, negligence is pretty far different from breach of warranty. Your Honor, sticking with Your Honor's example, I think that breach of contract or breach of warranty would be similar and the same harm or wrong than fraud in that case because fraud is lying. Warranty and contract arise out of the agreement that the parties made, and fraud is saying that information was concealed or that misrepresentations were made. It's fundamentally different. It's distinct. So just sticking with that example, I think under California law, and I think Aerojet made this observation that fraud, even in that case it was concealment of the injury, Aerojet, injury which I believe gave rise to a workers' compensation claim. The initial injury was workers' compensation and there was recovery, and then there was a subsequent claim directed at the aggravation of the initial injury. Based on concealment, based on fraud. Right, based on fraud. And the court made the observation there, no, fraud is fraud even though it was bound up in the same facts as the initial injury. It was distinct because it involved a claim of misrepresentation and it was fraud. And therefore, equitable tolling did not apply to the fraud claim whereas it might have applied to some other claim. Even if you accept Judge Fogle's proposition that you don't have to commit fraud in order to commit malpractice, in this particular case, the fraud was part of the malpractice. In other words, all the acts that would constitute fraud would also support a claim for malpractice, correct? I think primarily, yes. I think the underlying facts overlap substantially between the fraud claim and the malpractice claim. But the gravamen of what had to be proved was fundamentally different. You had to prove scienter, intent to defraud misrepresentations, obviously, or concealment. Obviously, you can prove negligence without coming anywhere close to proving fraud. If, in fact, he happened to commit malpractice via fraud, if we accept all these allegations as true, in terms of the witnesses and the evidence that a defendant would have to gather to defend against the malpractice claim are identical to what the defendant would have to gather. I don't think that they were identical. The gravamen of the malpractice action here was, after you heard from the PTO, you should have behaved differently. It was negligence for you not to have done this or not to have done that. It really focused on his actions as a lawyer. I think the fraud case focused less on, a competent lawyer would have done this, that, or the other thing, and focused much more on, you didn't tell us. Yeah, a competent lawyer doesn't lie to his client. A competent lawyer doesn't lie to his client. Absolutely, I agree with that. The gravamen of the malpractice action here was, you should have done differently. You shouldn't have gone back to the patent office and filed this petition. You should have filed a proper division on the first place. Let's keep in mind and keep very clear. Absolutely, I agree with Your Honor. That happened at a different firm. Kohler was at Penny and Edmonds then, and that was the subject of the arbitration by which they already recovered a substantial amount by the time we ever got back in the fray. The original divisional was filed by a different law firm, and that was the subject. That's how we ended up with these two malpractice actions. One of the pieces of the fraud claim is that you didn't tell me, at a time when we could have at least fixed part of the problem, that the PTO had denied the claim. That's the fraud claim. Not telling the client is also malpractice because in that three-week period, something could have been done to fix it, correct? Yes, I think the fraud claim focuses on, you should have told us and you didn't tell us. The malpractice claim focuses on, you should have taken steps other than the steps you took. Let me go back to Daviton. As the courts have explained for years, the equitable tolling doctrine requires that the same wrongs serve as the predicate for the earlier and later proceedings to make sure the defendant received proper notice. In this way, defendant is protected from stale claims. Once notified that a plaintiff seeks a remedy for a certain wrong, defendant can gather evidence, interview witnesses, and locate documents. The paragraph before that, the court says, that the underlying purpose of making sure, of having this distinct wrong concept being examined, is important to analyzing how it gets applied. In the paragraph before that, it refers to it as a threshold matter. Actually, it refers to it as, it says, in requiring as a threshold matter for purposes of equitable tolling, that a plaintiff seek the same remedies in each proceeding, dealing with the wrong, FOBs impose more stringent requirements. In other words, the court is saying, by making it a threshold requirement, that the FOBs court was wrong. Well, what it says, it says, California has long refused to apply the equitable tolling doctrine to toll the statute of limitations on a claim for a distinct wrong that was not the basis of the earlier proceeding. And that's exactly the principle that we're arguing here, that under California law, if it's a distinct wrong, then you can't have equitable tolling. And so therefore, in our view, the question boils down to, under California law, is fraud a distinct wrong from negligence, or professional negligence, which is the issue here. And we believe that the Aerojet case answers that question, and we believe that Judge Fogel answered that question earlier in this case, when the plaintiffs were, the appellants, were arguing, in essence, that fraud is a distinct wrong in order to get out of the one-year statute of limitations. But that's a different issue, isn't it, as to whether, in other words, could you not have a system in which you would say they are distinct torts for purposes of looking at the statute of limitations, question which statute of limitations applies, but for purposes of deciding the equitable tolling issue, pursuant to the prejudice-type analysis, they're the same. I don't see that those are inherently inconsistent positions. Well, I understand Your Honor's point. I guess I don't agree with it, because it would seem anomalous in the context of the statute of limitations, because both equitable tolling and the interpretation of the statute of limitations involve application of the statute of limitations. It would seem anomalous to us to say, in the context of the statute of limitations under California law, this fraud is a distinct wrong principle could have two different meanings. Did I understand Your Honor's... I understood you to say that with respect to application... One focus is arguably... I'm sorry. You're the judge, Your Honor. One focus is, I think, on whether the legislature has created a system of various statutes of limitations, which are directed at the cause of action, principally. In other words, you have a cause of action for fraud, three years. Cause of action for malpractice, one year. The question of equitable tolling, it seems to me, may not be directed at whether these are separate causes of action, but may be directed at whether there are separate injuries that flow from the various causes of action. And there, it seems to me, that it's not impossible to say that those are two different questions that can be answered differently. It's a very important point Your Honor raises, because it's not exactly right under California law. Under California law, under 340.6, and the case law has interpreted it this way, that it isn't just a cause of action for professional negligence. A cause of action, the gravamen of which, is professional negligence. So, a breach of fiduciary duty claim could fall under that. And can other causes of action. If the core of it is professional negligence, they're going to get that one year statute of limitations. But that statute even contemplates actual fraud, and it carves out actual fraud in the context of an attorney-client relationship, and makes clear that there are broader tolling principles. So, I mean, the statute itself refers to actual fraud. The 340.6. 340.6 doesn't apply to actual fraud. Right. But it applies to a broad spectrum of causes of action, the gravamen of which is malpractice by an attorney, negligence by an attorney, breach of fiduciary duty. And it mentions actual fraud in that statute. By mentioning actual fraud, clearly they contemplated that actual fraud could occur in the context of the attorney-client relationship. I think that's right. I think that's right. Can I ask just one question about the Aretha Doyle matter again? I just re-looked at the briefing on the partial motion for summary judgment. Aretha and Doyle weren't cited at all in any of the briefs. Did this come up at the hearing on May 20th? Your Honor, there were two separate summary judgment motions. There was a summary judgment motion relating to the statute of limitations, which actually occurred later. I understand that. The prior briefing, we filed for a partial summary judgment based upon the reissue patent. And in their opposition – Citing Doyle and Aretha? No, but in Plaintiff's opposition, they cited Doyle and Aretha. Can you give me a document number for those? Because I couldn't find those on the record. I'll find them. And then they were discussed by Judge Fogel in his partial summary judgment order. He discussed the party's arguments about Doyle and Aretha. And he distinguished Aretha and relied on Doyle. The partial summary judgment motion that I saw, where you were trying to limit the exposure of damages, was based on claims 32 to 39 being invalid for on-sale borrowing. Your Honor, that was part of the summary judgment motion, which related to the statute of limitations. That was a different summary judgment motion. I just need citations of the briefing on the Doyle and Aretha. I'm going to find that for you, Your Honor. Perhaps while my friend is arguing. All right. Very well. Why don't we hear rebuttal, then, if you had something further. Yes. Thank you. Thank you. Mr. Rosen, we'll give you your full three minutes. Your Honor, I don't have very much by rebuttal. I do have answers to the two questions that were asked to me. The first is, I have a copy of the California Supreme Court decision, which is GRISET, G-R-I-S-E-T, against Fair Political Practices Commission, and the official site is 25 Cal 4th, 688. You can leave that with the clerk if you'd like. Thank you. Secondly, I do have answers to your questions, Judge Clevenger. What you have in the appendix is not the complete copies of the brief, on the partial summary judgment motion. In fact, it is correct that Doyle and Arita were raised in the opposition. I can pick it up. I'm going to give you the document number. Which number? 115 is the opposition. The reply is 117. And the surreply, all of which do discuss those two cases, I think the surreply did, yes, is 122. Thanks a lot. Just let me ask you one question. Is it your position that the Arita rule was violated in the reissue proceedings here? That is one of our positions. Our position more critically is that if- That would invalidate the claims, correct? Well, I don't think so. Why not? Well, let me think about that. Arita says if you go and you ask for substantially the same claim or substantially the same claim that you left behind in your divisional, you can't have that. No, it's not a violation of the Arita rule. It was a failure to follow the kind of an analysis that was used in Arita to parse the claims in such a way that you could actually determine in your own review of the claim language will show that the inventions that were claimed in the original patent, the divisional patent, and the reissue patent, the claims in the reissue patent were not the same as the claims. They're different. They're different. They're broader. Actually, in many ways, they're narrower because they speak of a single criteria as opposed to one of other criteria. So your argument would be you're not violating the Arita rule because the claims are different, but you're not necessarily making the argument that you're under Doyle because your claims are broader in the form of a genus that wraps over the species. That's correct. So what was the mistake that Judge Fogle made in his summary judgment, partial summary judgment order? Your briefs are a little very specific about what you think wasn't recaptured. If we were to remand this case back to the district court and tell it that there's a concern about the analysis and the partial summary judgment motion, what needs to be done? Okay. Okay. Claim 43 of the reissue patent. Contains restrictions that are now narrowing the invention or the claim to make it smaller than the divisional. Narrower than the claim is issued, right? Yeah, the claim is issued as narrow. The divisional claim speaks of, quote, at least one operating characteristic, which allows for the possibility of more than one. Whereas the reissue claim 43 covers an operating characteristic, which is only one. So let me get a hold of this here. So the point would be you got yourself in reissue a claim that you believe is valid and is not invalid by ARITA or any other violation of 251, but that reissue claim is narrower than what was in the divisional, right? Correct. And so somebody made a mistake in the reissue in not claiming as much as they should have because there was support in the original application for what was in the divisional. So how is this problem one that lies at Morgan Lewis' feet? They didn't prosecute the reissue. You're saying there's got to be harm here, right? What's the harm? You've got a claim in reissue that is broader than your original claim, so it suffices. But it's narrower than whoever prosecuted the reissue could have claimed. Well, but then it would have run into the problem of ARITA, whereby if the claim were as broad as the divisional claim, then it would be invalid. It couldn't be claimed under ARITA. So it was narrowed for that purpose to avoid having that problem. So your argument would be that the prosecutor of the reissue could not have reclaimed the full scope. Correct. And then the failure of the prosecutor of the reissue to be able to do that lies at the feet of Penny. Yes. I mean, but Penny's not in the case anymore. Well, lies at the feet of Penny. Well, no, it lies at the feet of Kohler and Morgan Lewis because they had, as Judge O'Malley identified, that two-week period of time in which they could have taken care of the problem. Assuming that there's no prior ARITA that rose up in that two-week period that snaps down. No. Yeah, prior ARITA. That's correct. But the publication of the- They would be able to sneak under the wire. Just barely, but there was that two weeks, and as some of the cases indicated, sometimes they're turned around. It's hypothetical, but we don't know whether within the case we might someday find out- You may. Whether there was prior ARITA out there in the two-week period. You might. There's a similar problem with reissue claim 58, a similar kind of response. Very well. So, otherwise, I thank your honors. Thank you, and we thank both counsel. The case is submitted.